Gilmore, J.
The proceeding out of which the questions in this case arise, was the condemnation of property for the extension of Sloo street from its western terminus to Carr street, in the city of Cincinnati.
The ordinance of condemnation provided that the compensation to the owners of the property taken should be ■assessed upon the property abutting on and benefited by ■the improvement.
The property condemned was held by John Ryan under *118 a lease for twenty years with the privilege of purchase, thereversionary fee being in the executors of Nicholas Long-worth, deceased. On appeal from the Probate Court, there was a verdict in the Court of Common Pleas, on the 6th of June, 1874, assessing the compensation at $10,300. On the 19th of March, 1875, an ordinance was passed by the city council appropriating $10,300 from the general fund to pay for the property condemned, and the city auditor was authorized to draw his warrant on the city treasurer for the amount, in favor of the proper parties, “upon receiving proper vouchers therefor from the solicitor.”
After the rendition of the verdict in the Court of Common Pleas, on the 6th of June, 1874, the cause was regularly continued from term to term until the November term, 1875, when it was affirmed; and the court on full hearing apportioned the assessment between the parties interested, giving to the executors of Longworth $5,693.59, and to Ryan $4,606.41; and adjudged that upon payment of said sums to the parties named, “ the city of Cincinnati shall be forever entitled to all the interest and estates inl- and possession of the property condemned.” It is admitted that the ordinances and proceedings are in all respects in legal form, and regular, except in this, that more than six months elajtsed between the rendition of the verdict and its affirmance, and the final order of the court.
At the time of the passage of the ordinance appropriating the money to the payment of the compensation named, there was, has been, and now is money belonging to the general fund in the treasury, sufficient and applicable to the payment of the sum assessed. After the order made in the Court of Common Pleas, the city solicitor failed to-furnish the vouchers, and the city auditor, on the demand, of the relators, refused, and still refuses, to issue warrants on the treasury to pay the amount found due to them respectively. The relators are ready, able, and willing to deliver possession of the property condemned to the city on receiving payment.
The relators are the parties entitled to the compensation,. *119 and they now move for a peremptory mandamus to compel the city solicitor to furnish the proper vouchers, and the city auditor to issue warrants on the treasurer for the amount to which they are respectively entitled under the finding and order of the Court of Common Pleas.
The respondents resist the motion on the following grounds: First. That the city auditor is only required to issue his warrants on the treasurer, on the vouchers of the city solicitor, and it is not alleged that the latter has furnished the proper vouchers to him. Second. That the city solicitor is the law officer of the corporation, and will not he required to furnish the vouchers, unless he is satisfied that the proceedings are valid and give the city a good title to the property condemned, and will not, therefore, be compelled by mandamus to furnish the vouchers, if, in his opinion, the proceedings are not valid.
In support of the assumed correctness of the solicitor’s opinion that the proceedings are invalid and confer no title upon the city, the following reasons are assigned and relied on:
1. That the right of the corporation ceased and determined “ six months after the assessment of compensation was made,” and 'that the verdict of the jury constitutes the assessment, and the time commenced running from the date of its rendition, and not from the time it was affirmed, and the money ordered to be paid by the cour
2. That the right of the city to assess the expense of the improvement upon adjoining property exists only in cases where the land is appropriated; and owing to the invalidity of the proceedings, if the city takes the land in this case, it will take it by purchase and not by appropriation, and hence the adjoining property can not be assessed to pay for it.
3. That before any ordinance appropriating money can take effect, the auditor must have certified that there was money in the treasury especially set apart to meet the expenditure ; and that no such certificate was issued before or *120 since tbe passage of the ordinance appropriating the money to pay for the land in question.
These objections will be separately noticed. The first rests upon section 587 of the municipal code, which reads as follows: “ Whenever a municipal corporation shall make an appropriation of land for any purpose specified in this •chapter, and shall fail to pay for or take possession of the same for six months after the assessment of compensation shall have been made as above provided, the right of such corporation to make such appropriation on the terms of the assessment so made shall cease and determine; and any lands so appropriated shall be relieved from all incumbrance on account of the proceedings in such case or the resolution of the council making the appropriation; and the judgment or order of the court, directing such assessment to be paid, shall cease to be of any effect, except as to the costs adjudged against the corporation.”
The provisions of this section are evidently intended for the benefit of - the land-owner, preventing, as they do, the land from being hung up in uncertainty for an unreasonable length of time, and a strict compliance with its requirements could be waived by the owner. An acceptance of the money assessed as compensation after the expiration of six months from the date of the assessment, and a delivery of possession, would constitute such a waiver and operate as a ratification of the proceedings.
But aside from this, it seems to us that the respondents take too narrow a view of the effect of the provisions of this section, when construed, as they must be, in connection with the provisions of previous sections on the same subject. Premising that the proceeding to ascertain the compensation due to the owners was properly commenced in the Probate Court, we will ascertain the powers and duties of that court after the rendition of the verdict. These are defined by section 524, which reads as follows: “ So soon as the amount of compensation which may be due to the owners of the property to be taken, or any of them, shall have been ascertained by the jury, the court *121 shall make such order for its payment or deposit as shall be deemed right and proper in respect to the time and place of payment or deposit, or to the persons entitled to receive payment and the proportion payable to each, and to require adverse claimants for any part of the money or property to interplead, so as fully to settle and determine their rights and interests according to equity and justice.”
From, these provisions it is manifest that the rendition of the verdict alone does not constitute the assessment in the sense that this word is used in section 537, unless the verdict is to have an effect in the Court of Common Pleas, on appeal, different from what it had in the Probate Court. That this is not so, and that the verdict is to have the same effect in both courts, appears from the provisions of section 531, which are as follows: “"Where the proceeding was had in the Probate Co.urt, any party interested in the inquiry and assessment may take an appeal to the Court of Common Pleas, and thereupon the same proceedings shall be had as if the application had been originally made in that court.”
By section 532 the right of appeal is predicated upon “ the final order determining the rights of such party ” in the Probate Court; and the prescribed condition of the undertaking on appeal is, “ that the party appealing shall abide by and perform the order, judgment, or decree of the appellate court.” Thus the appeal is from the “ final order ” of the Probate Court, and the condition upon which it is given, is that the appellant shall abide the “final order, judgment, or decree ” of the appellate court.
In view of all these provisions, section 537, on this point, must be construed to mean this: That if the corporation shall fail to pay for or take possession of the land appropriated for six months after the judgment or order of the court directing the assessment to be paid, the right of the corporation to make the appropriation on the terms of the assessment made shall cease.
The corporation was not authorized or required to pay on the rendition of the verdict. There were adverse claim *122 ants for the money, whose rights had to be settled and determined by the court, before the city could properly pay over the money, unless the court had seen proper, in its discretion, to order the payment or deposit of the money before the final order was made, which was not done.
Although the verdict was rendered in June, 1874, the court did not determine the rights of the claimants and make a final order directing the payment of the money till November, 1875. Notwithstanding the delay, the final order when entered became binding on the parties, and must remain so until it is reversed or set aside. We therefore hold that the six months would commence running,, not from the rendition of the verdict, but only from the-date of the final order in the Court of Common Pleas. There could be no failure to pay on the part of the city, until there was an opportunity to pay; and six months have not elapsed since the opportunity or right to pay was first given by the final order of the court. The first objection must therefore be disregarded.
2. The second objection is, that even if the city takes and pays for the property condemned, it takes the title by purchase and not by appropriation, and hence can not assess the expense on the adjoining property. Erom what has been before said, it will appear that there is no force in this objection. We think the city will take the title by appropriation ; but the right to assess the expense upon the adjoining property depends upon other provisions of the municipal code, and other proceedings not before us.
8. The remaining objection is, that section three of the act of April 16,1874 (71 Ohio L. 80j, which provides that no ordinance or order for the expenditure of money shall take effect until the city auditor shall certify to the city council that there is money in the treasury especially set apart to meet such expenditure, applies in this case; and that no such certificate was given by the auditor to the-council before or since the passage of the ordinance of March, 1875, appropriating the money to pay for the land, in question.
*123 The effect and operation of this law is misapprehended.. The first clause of the third section is: “ That from the taking effect of this act no ordinance or other'order for the expenditure of money shall he passed by the city council . . . without stating specifically in such ordinance or order the items of expense to be made under it, and no such ordinance or order shall take effect until the auditor of said city shall certify to the city council there is money in the treasury especially set apart to meet such expenditure,” etc.
This law, by its own terms, only operates prospectively. It conditionally prohibits the passage and taking effect of ordinances for the expenditure of money after its passage, and does not apply to ordinances appropriating money to pay expenditures incurred under ordinances in force at the time the law took effect. The ordinance condemning the land in question, is an ordinance for the expenditure of money, but it was passed and took effect in September, 1872, long before the law in question was passed, and therefore it is not affected by it; and the passage of the ordinance of March, 1875, appropriating money to pay for the land condemned under the former ordinance was not in contravention of the third section of the, law. Consequently this objection is of no avail to the respondents.
The result is, that we find that the proceedings condemning the property in question were regular, and will confer a good title therefor upon the city, when paid for and possession taken, which the relators are able and willing to surrender to the city on receiving payment.
Whether the city solicitor was, in this case, unconditionally required to furnish the vouchers or not, we have-thought it better to examine and dispose of the objections made to issuing them, founded, as they were, upon his legal opinion that the proceedings .gave no title to the property condemned, rather than to hold that he had nothing more-than a mere ministerial duty to perform in the premises.
We have found that the objections set up are insufficient, and consequently there remains only a ministerial duty to he performed by the city solicitor, in furnishing the vouch *124 ers as required by the ordinance of March, 1875, which is of binding obligation upon him. Under these circumstances, having refused to issue the vouchers, mandamus will lie to compel him to perform the duty. On receiving the vouchers, the duty of issuing the warrants on the treasurer is • a ministerial duty, imposed upon the city auditor by the ordinance last mentioned, and he, in like manner, will be compelled to perform the duty by mandamus.
A peremptory mandamus is awarded, as prayed for by the relators.
McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.